UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Said Abdullahi, | Case No. |
| Plaintiff, | |
| v. | **Complaint** |
| Sergio Villegas and Daniel Barlow,<br>in their individual capacities<br>as Minneapolis Police Officers, and<br>the City of Minneapolis, | **Jury Trial Demanded** |
| Defendants. | |

For his Complaint, Said Abdullahi ("Abdullahi") states and alleges upon knowledge, information, and belief as follows:

## Introduction

1.     This is an action for money damages due to Officers Sergio Villegas ("Villegas") and Daniel Barlow ("Barlow") violating Abdullahi's First and Fourth Amendment rights under color of state law by subjecting Abdullahi to unreasonable seizure, excessive force, and First Amendment retaliation.  This action also involves the City of Minneapolis's ("City") widespread custom and practice of using excessive force and retaliating against individuals like Abdullahi who exercise their First Amendment Rights.

## Jurisdiction and Parties

2.      Abdullahi brings this action pursuant to 42 U.S.C §§ 1983 and 1988, the First, Fourth, and Fourteenth Amendment to the United States Constitution, and 28 U.S.C §§ 1331 and 1343 (a)(3).  These statutory and constitutional provisions confer original jurisdiction over this matter to this Court.

3.      Abdullahi is a Black man of Ethiopian descent who resided in Minneapolis, Minnesota at all relevant times.

4.      The Minneapolis Police Department ("MPD") is and was at all relevant times a Minneapolis agency, providing the means through which the City fulfills its policing functions.

5.      Villegas resided in Minnesota at all relevant times.

6.      Villegas was a sworn officer in the MPD working within the course and scope of his MPD duties at all relevant times.

7.      Barlow resided in Minnesota at all relevant times.

8.      Barlow was a sworn officer in the MPD working within the course and scope of his MPD duties at all relevant times.

9.      Villegas and Barlow may jointly be referred to herein as the "Officers."

## Factual Background

10.     On April 22, 2022, Abdullahi's vehicle broke down near 924 19th Avenue South, Minneapolis.

11.     Abdullahi approached the occupant of a parked vehicle (the "Occupant") for assistance, i.e., a "jump start."

12.     The Occupant, a white man, was hostile towards Abdullahi, threatened him with a knife and baseball bat, and called 911.

13.     Abdullahi showed the Occupant that Abdullahi had mace to defend himself.

14.     The Officers arrived on the scene in their squad car in response to the Occupant's 911 call.

15.     Barlow spoke to Abdullahi while Villegas spoke with the Occupant.

16.     Abdullahi explained to Barlow how he had sought a jump start but was then threatened by the Occupant with weapons.

17.     The Occupant remained extremely agitated and hostile towards Abdullahi while Abdullahi attempted to share his side of the story with Barlow.

18.     Barlow acknowledged that Abdullahi was engaged in zero unlawful behavior and posed no threat to the Occupant, expressly stating to the Occupant, "there's obviously no threat here."

19.     The Occupant refused to calmly walk away from the interaction as Abdullahi was being interviewed by Barlow.

20.     Still, Barlow empowered the Occupant to feel justified about his unreasonable hostilities towards Abdullahi.

21.     Barlow referred to Abdullahi as an "idiot" to the Occupant twice stating, "he's just an idiot."

22.     Recognizing that there was no threat or unlawful conduct, the Officers got in their squad car and started to depart the scene.

23.     As the Officers drove away, one of Officers informed Abdullahi that he would take Abdullahi to jail if he went near the Occupant's car again, even though the Officers knew that Abdullahi's broken down-vehicle was right next to the Occupant's vehicle.

24.     One of the Officers then called Abdullahi an "idiot" as they drove away.

25.     One of the Officers then informed the Occupant that they would take Abdullahi to jail merely for being next to the Occupant's vehicle again.

26.     Abdullahi remained in the area because he was awaiting assistance for his broken-down vehicle.

27.     The Occupant also remained in the area.

28.     The Occupant continued to yell at Abdullahi after the Officers departed.

29.     Abdullahi was afraid to leave his car unattended given the hostilities espoused from the Occupant.

30.     As a result, Abdullahi and the Occupant exchanged unpleasantries, but Abdullahi engaged in no threatening or unlawful behavior.

31.     The Officers returned to the scene.

32.     As they did so, without any understanding as to what transpired since they departed, one of the Officers stated, "I'm not dealing with his ass any longer," in reference to Abdullahi.

4

33.     Concerned that he was going to be treated unfairly, Abdullahi recorded the conversation when the Officers arrived back on the scene, as he did during the prior conversations with the Officers.

34.     Nevertheless, the Officers were hostile towards Abdullahi and not the Occupant.

35.     Abdullahi was critical of the Officers.

36.     He expressed his belief that the Officers were harassing him and informed them that he wished to speak to a supervisor.

37.     One of the Officers referred to Abdullahi as "fucking stupid."

38.     The Officers, speaking amongst themselves, mocked Abdullahi for Abdullahi requesting to speak to a supervisor.

39.     The Officers, again speaking amongst themselves, acknowledged that the Occupant could easily move his functional car away from Abdullahi's broken-down vehicle.

40.     The Officers went to speak to the Occupant.

41.     One of the Officers asked the Occupant to move his car, recognizing that it is next to Abdullahi's broken down car.

42.     The Occupant then attempted to weaponize the Officers stating, "you guys said that if he walked by my car again that you were gonna [sic] arrest him."

43.     Both Officers made it clear to the Occupant that Abdullahi was walking to his own car, stating things to the effect of, "It's difficult for him to get to his car without walking by yours."

44.     The Occupant then threatened Abdullahi with physical harm right in front of the Officers, stating "Dude, I'm gonna [sic] fucking drop you . . . ."

45.     Despite the fact that it was the Occupant threatening Abdullahi with physical violence, the Officers exited their vehicle and began using physical force on Abdullahi as Abdullahi merely attempted to film the interaction with Officers.

46.     Barlow pushed Abdullahi twice with punitive intent and without lawful purpose.

47.     In response, Abdullahi said he wanted to press charges against Barlow for assault.

48.     As Abdullahi looked at Barlow, recording and informing him that he wanted to press charges against Barlow for assault, Villegas unlawfully, unreasonably, and violently pushed Abdullahi to the pavement.

49.     Villegas did not push Abdullahi for purposes of control but with the punitive intent of causing Abdullahi to fall to the ground and sustain harm.

50.     Villegas's push of Abdullahi was akin to what is known in American football as a "blindside block."  *See* Exhibits A and B attached hereto, BWC Video Clips with redactions made by the City of Minneapolis.

51.     Images depicting Villegas's unlawful and violent act from the BWCs are set forth below:







52.    Blindside blocks have been illegal in the National Football League (NFL) since 2019 because of their high risk of harm to players in full pads and on grass fields.

53.    Abdullahi did sustain harm as a result of the unlawful push to the ground, including a laceration to his elbow, from which he now has permanent and unwanted scarring.

54.    After falling to the ground, Abdullahi continued to tell the Officers to stop assaulting him.

55.    In an effort to cover up their unlawful conduct towards Abdullahi, the Officers handcuffed him, arrested him, brought him to the Hennepin County Jail, and tab-charged him with misdemeanor disorderly conduct.

56.    Abdullahi was forced to endure three nights in the Hennepin County Jail as a result of these unlawful charges.

57.    All charges against Abdullahi were dismissed and resolved in his favor.

**The City's History of Relevant Unlawful Conduct**

58.    The City and MPD have a well-documented history of using excessive force, threats of force, or otherwise unlawful retaliatory conduct in response to police criticism or otherwise lawful First Amendment conduct.

59.    Although each of the cases detailed below do not necessarily allege the specific constitutional theories at issue in this case, the conduct is similar enough that similar claims could have been pursued as a matter of strategy.

60.    In *Flowers v. Stoll*, No. 04-cv-3959 (ADM/AJB) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Aug. 30, 2004) (incorporated herein by reference). The City paid $15,000.00 to settle that lawsuit.  *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

61.    In *Thomas v. Villamor*, No. 05-cv-0010 (PAM/JSM) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in

other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Jan. 4, 2005) (incorporated herein by reference). The City paid $14,000.00 to settle that lawsuit.  *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

62.    In *Hall v. Burns*, No. 06-cv-4567 (JNE/JJG) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Nov. 21, 2006) (incorporated herein by reference). The City paid $12,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

63.    In *Jones v. City of Minneapolis*, No. 07-cv-3577 (DWF/SER) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See* Complaint at ECF No. 1-2 (filed Aug. 2, 2007) (incorporated herein by reference).  The City paid $15,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

64.      In *Ganley v. Lilliard*, No. 08-cv-5048 (RHK/JSM) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1-2 (filed Aug. 28, 2008) (incorporated herein by reference). The City paid $70,800.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

65.      In *Powers v. City of Minneapolis*, No. 09-cv-2603 (DWF/JSM) (D. Minn.), a Minneapolis police officer engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards that Minneapolis police officer. *See* Complaint at ECF No. 1-2 (Sept. 23, 2009) (incorporated herein by reference). The City paid $10,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 5, 2023).

66.      In *Robinson v. Lazarchic,* No. 09-cv-3113 (PAM/FLN) (D. Minn.), a Minneapolis police officer engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards that Minneapolis police officer. *See* Complaint at ECF No. 1 (Nov. 6, 2009) (incorporated herein by reference). The City paid $35,002.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at

https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

67.    In *Williams-Brewer v. City of Minneapolis,* No. 09-cv-3524 (JRT/JJG) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Dec. 9, 2009) (incorporated herein by reference). The City paid $20,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

68.    In *Williams v. Voss,* No. 10-cv-2092 (ADM/TNL) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1-1 (filed May 19, 2010) (incorporated herein by reference). The City paid $24,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

69.    In *McClennon v. Kipke,* 10-cv-2598 (RHK/JJK) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See*

Complaint at ECF No. 1 (filed June 24, 2010) (incorporated herein by reference).  The

City paid $5,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard,

available at https://www.minneapolismn.gov/government/government-

data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

70.     In *Robinson v. City of Minneapolis*, No. 10-cv-3067 (RHK/JJK) (D. Minn.),

Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's

First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in

other valid First Amendment conduct directed towards Minneapolis police officers. *See*

Complaint at ECF No. 1 (filed July 20, 2010) (incorporated herein by reference). The

City paid $15,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard,

available at https://www.minneapolismn.gov/government/government-

data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

71.     In *Lyons v. Boelter,* No.10-cv-3871 (ADM/JJK) (D. Minn.), Minneapolis

police officers engaged in retaliatory conduct that violated the plaintiff's First

Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other

valid First Amendment conduct directed towards Minneapolis police officers. *See*

Complaint at ECF No. 1 (filed Sept. 8, 2010) (incorporated herein by reference). The City

paid $9,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at

https://www.minneapolismn.gov/government/government-data/datasource/officer-

payouts-dashboard/ (last accessed June 10, 2023).

72.     In *Lee v. Macias*, No. 11-cv-1945 (DWF/FLN) (D. Minn.), Minneapolis

police officers engaged in retaliatory conduct that violated the plaintiff's First

Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed July 18, 2011) (incorporated herein by reference). The City paid $68,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

73.     In *Nguyen v. Lokke,* No. 11-cv-3225 (PJS/SER) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1-3 (filed Nov. 1, 2011) (incorporated herein by reference). The City paid $91,020.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

74.     In *Yzaguirre v. Raichert,* No. 12-cv-130 (JRT/AJB) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Jan. 17, 2012) (incorporated herein by reference). The City paid $3,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

75.     In *Dickson v. Stewart*, No. 12-cv-845 (JNE/JSM), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See* Complaint at ECF No. 1-2 (filed Apr. 3, 2012) (incorporated herein by reference).  The City paid $65,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

76.     In *Thompson v. Barnes,* No. 12-cv-2168 (MJD/JSM) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See* Complaint at ECF No. 1-2 (filed Sept. 5, 2012) (incorporated herein by reference).  The City paid $43,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

77.     In *Austin v. Siedl*, No. 13-cv-407 (PJS/SER), Minneapolis officers engaged in retaliatory conduct that violated the plaintiffs' First Amendment rights as a result of plaintiffs criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See* Complaint at ECF No. 1-2 (filed Feb. 19, 2013) (incorporated herein by reference).  The City paid $146,107.50 to settle that lawsuit.  *See* Officer Conduct Payouts Dashboard, available at

15

https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

78.    In *Lang v. City of Minneapolis,* No. 13-cv-3008 (DWF/TNL) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Nov. 4, 2013) (incorporated herein by reference). The City paid $43,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

79.    In *Milton v. Barze,* No. 15-cv-1930 (RHK/TNL) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Apr. 14, 2015) (incorporated herein by reference). The City paid $82,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

80.    In *Gauthier v. Boyd,* No. 15-cv-3068 (RHK/KMM) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See*

Complaint at ECF No. 1 (filed July 15, 2015) (incorporated herein by reference). The City paid $86,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

81.     In *Garcia v. Lehner,* No. 15-cv-3214 (SRN/HB) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Aug. 5, 2015) (incorporated herein by reference). The City paid $360,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

82.     In *Ferguson v. Thunder,* No. 17-cv-1110 (PJS/TNL) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed April 10, 2017) (incorporated herein by reference). The City paid $25,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

83.     In *Gaines v. City of Minneapolis,* No. 18-cv-0838 (PAM/HB) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's

First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Mar. 26, 2018) (incorporated herein by reference). The City paid $58,829.10 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

84.     In *Johnson v. Wolff,* No. 18-cv-888 (ECT/TNL) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1-2 (filed Mar. 29, 2018) (incorporated herein by reference). The City paid $37,500.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

85.     In *McKinnies v. City of Minneapolis,* No. 18-cv-2738 (NEB.BRT) (D. Minn.), Minneapolis police officers engaged in retaliatory conduct that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers. *See* Complaint at ECF No. 1 (filed Sept. 24, 2018) (incorporated herein by reference). The City paid $25,000 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

86.     In *LeMay v. Mays,* No. 19-cv-2463 (JRT/BRT) (D. Minn.), Minneapolis
police officers engaged in retaliatory conduct that violated the plaintiff's First
Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other
valid First Amendment conduct directed towards Minneapolis police officers.  *See*
Complaint at ECF No. 1 (filed Sept. 6, 2019) (incorporated herein by reference).  The
City paid $150,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard,
available at https://www.minneapolismn.gov/government/government-
data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

87.     In *Khalif v. City of Minneapolis,* No. 20-cv-1354 (NEB/TNL) (D. Minn.),
Minneapolis police officers engaged in retaliatory conduct in June of 2019 that violated
the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise
engaging in other valid First Amendment conduct directed towards Minneapolis police
officers.  *See* Complaint at ECF No. 1 (filed June 11, 2020) (incorporated herein by
reference).  The City paid $30,000.00 to settle that lawsuit. *See* Officer Conduct Payouts
Dashboard, available at https://www.minneapolismn.gov/government/government-
data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

88.     In *Holmes v. Keyes*, No. 22-cv-348 (WMW/DTS) (D. Minn.), Minneapolis
police officers engaged in retaliatory conduct in May 2018 that violated the plaintiff's
First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in
other valid First Amendment conduct directed towards Minneapolis police officers.  *See*
Complaint at ECF No. 2 (filed Feb. 7, 2022) (incorporated herein by reference).  The City
paid $60,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available

at https://www.minneapolismn.gov/government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

89.     In *Pope v. Chauvin*, No. 22-cv-1434 (ECT/TNL) (D. Minn.), Minneapolis police officers, including Derek Chauvin, engaged in retaliatory conduct in September 2017 that violated the plaintiff's First Amendment rights as a result of plaintiff criticizing and/or otherwise engaging in other valid First Amendment conduct directed towards Minneapolis police officers.  *See* Complaint at ECF No. 1 (filed May 31, 2022) (incorporated herein by reference).  The City paid $7,500,000.00 to settle that lawsuit. *See* Officer Conduct Payouts Dashboard, available at https://www.minneapolismn.gov /government/government-data/datasource/officer-payouts-dashboard/ (last accessed June 10, 2023).

90.     In *Bligh v. Ruden*, 23-cv-95 (KMM/JFD), Minneapolis police officers engaged in retaliatory conduct and used excessive force towards a non-violent protestor who was engaged in lawful criticism of the police.  The City paid $200,000.00 to resolve that matter.

91.     Minneapolis officers, particularly Chauvin, were not reasonably and/or timely disciplined or required to undergo training as a result of the lawsuits described in Paragraph 60 through 90.

**Villegas's History of Relevant Misconduct**

92. On August 6, 2020, Villegas was sued for First and Fourth Amendment violations in the aftermath of George Floyd's murder. *See Samaha v. Minneapolis*, No. 20-cv-1715 (KMM/DTS).

93. In that case, plaintiff Johnathan Mason ("Mason") alleged that he was peacefully protesting on the evening of May 28, 2020, and was engaged in a non-confrontational discussion with one of the state patrol officers.

94. As Mason engaged in that conversation, Villegas came "from behind the State Patrol officers and pepper spray[ed] Mason . . . ." *Samaha*, ECF No. 99, Second Amended Complaint ¶¶ 56-58 (June 15, 2022).

95. The City paid $600,000 to resolve Mason's case and the cases of his co-plaintiffs in the *Samaha* matter.

96. Villegas was not reasonably and/or timely disciplined or trained as a result of his conduct towards Mason.

**The DOJ Investigation**

97. On April 21, 2021, the Department of Justice ("DOJ") opened a pattern or practice investigation of MPD and the City.[1]

---

[1] *See* United States Dep't of Justice Civil Rights Div. & United States Attorney's Office D. Minn. Civil Div., *Investigation of the City of Minneapolis and the Minneapolis Police Department*, ("DOJ Findings"), *available at* https://www.justice.gov/d9/2023-06/minneapolis_findings_report.pdf (last accessed Nov. 21, 2023).

98.     On June 16, 2023, the DOJ announced its findings that there was reasonable cause to believe that the City and MPD engage in a pattern or practice of conduct that deprives people of their rights under the Constitution and federal law.

99.     The DOJ found, as relevant here, that "MPD uses excessive force, including unjustified deadly force and other types of force" and "that MPD violates the rights of people engaged in protected speech."

100.    The DOJ also found "persistent deficiencies in MPD's accountability systems, training, supervision, and officer wellness programs, which contribute to the violations of the Constitution and federal law."

101.    The DOJ also found that "For years, MPD used dangerous techniques and weapons against people who committed at most a petty offense and sometimes no offense at all.  MPD used force to punish people who made officers angry or criticized the police."

102.    When discussing the unreasonable bodily force that MPD consistently uses, the DOJ found that "MPD officers aggressively confront people suspected of a low-level offense—or no offense at all—and use force if the person does not obey immediately. Officers sometimes used force against people who were already compliant[.]"

103.    The DOJ also found that "[i]n many instances, MPD officers shove adults and teens—including bystanders—for no legitimate reason.  Such uses of bodily force are retaliatory and violate the Fourth Amendment."

104.    When discussing MPD's pattern or practice of violating the rights of people engaged in protected conduct, the DOJ found that MPD violates the First Amendment by,

22

as relevant here, retaliating against protesters and penalizing people who challenge or question MPD during stops and calls for service.

## Count I – Fourth and Fourteenth Amendment – Excessive Force, 42 U.S.C. § 1983
### (Plaintiff v. Barlow and Villegas)

105.    Abdullahi hereby realleges and incorporates each paragraph as though fully set forth herein.

106.    Defendants Barlow and Villegas, while acting under color of state law, violated Abdullahi's clearly established and well-settled federal civil rights to be free from excessive force and unreasonable seizure.

107.    Defendants Barlow and Villegas subjected Abdullahi to this deprivation of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated by their actions.

108.    Defendants Barlow and Villegas's actions were objectively unreasonable pursuant to *Graham v. Connor*, 490 U.S. 386 (1989).

109.    Abdullahi had committed no crime.

110.    Abdullahi posed no threat to the safety of Barlow and Villegas, himself, or others.

111.    Abdullahi never actively resisted arrest or attempted to evade arrest by flight.

112.    As a direct and proximate result of the acts and omissions of Barlow and Villegas, Abdullahi suffered bodily, mental, and emotional harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

113.    Abdullahi claims punitive damages in an amount to be determined by the jury against defendants Barlow and Villegas as a matter of right under federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

114.    Abdullahi is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## Count II – Fourth and Fourteenth Amendment – Unlawful Arrest, 42 U.S.C. § 1983
### (Plaintiff v. Barlow and Villegas)

115.    Abdullahi hereby realleges and incorporates each paragraph as though fully set forth herein.

116.    Defendants Barlow and Villegas, while acting under color of state law, had no arguable probable cause to arrest Abdullahi and violated Abdullahi's clearly established and well-settled federal civil rights to be free from unlawful arrest when they arrested him.

117.    Defendants Barlow and Villegas subjected Abdullahi to this deprivation of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated by their actions.

118.    Abdullahi had committed no crime.

119.    Abdullahi posed no threat to the safety of Barlow and Villegas, himself, or others.

120.    Abdullahi never actively resisted arrest or attempted to evade arrest by flight.

121.    As a direct and proximate result of the acts and omissions of Barlow and

Villegas, Abdullahi suffered the unlawful deprivation of his liberty, mental and emotional

harm, lost wages, and other items of compensatory damages.

122.    Abdullahi claims punitive damages in an amount to be determined by the

jury against defendants Barlow and Villegas as a matter of right under federal common

law, *Smith v. Wade*, 461 U.S. 30 (1983).

123.    Abdullahi is entitled to recovery of his costs, including reasonable

attorneys' fees, under 42 U.S.C. § 1988.

### Count III- First Amendment – Retaliation, 42 U.S.C. § 1983
### (Plaintiff v. Barlow and Villegas)

124.    Plaintiff  hereby realleges and incorporates each paragraph as though fully

set forth herein.

125.    Barlow and Villegas violated Abdullahi's First Amendment rights in their

individual capacity.

126.    Abdullahi was verbally criticizing and filming the police when he was

subjected to unlawful force by the officers.

127.    Abdullahi did not engage in any threatening conduct towards the officers or

anyone else.

128.    Abdullahi engaged in constitutionally protected acts by verbally criticizing

MPD Officers Barlow and Villegas.

129.    Abdullahi was not under arrest, and Barlow and Villegas did not have

arguable probable cause to place him under arrest.

130.   Barlow and Villegas retaliated against Abdullahi for engaging in constitutionally protected activity.

131.   Barlow and Villegas singled out Abdullahi for engaging in constitutionally protected activity.

132.   Barlow and Villegas intended their conduct to chill Abdullahi's will to criticize them.

133.   Barlow and Villegas would not have retaliated against Abdullahi if Abdullahi had not verbally criticized Barlow and Villegas.

134.   Barlow and Villegas's acts would chill a reasonable person of ordinary firmness from continuing to engage in a constitutionally protected activity.

135.   Barlow and Villegas's acts did, in fact, chill Abdullahi from continuing to engage in constitutionally protected activity that include criticizing law enforcement.

136.   Barlow and Villegas, at all times acting under color of law, used threats, commands, and unlawful use of force, arrest, and intimidation to curb Abdullahi's exercise of his First Amendment rights.

137.   The actions of Barlow and Villegas were willful, malicious, and in violation of the known rights of Abdullahi.

138.   Alternatively, Barlow and Villegas acted with reckless and deliberate indifference to the constitutional rights of Abdullahi.

139.   Barlow and Villegas's retaliatory animus caused injury to Abdullahi.

140.    As a direct and proximate result of the acts and omissions of Barlow and Villegas, Abdullahi suffered bodily, mental, and emotional harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

141.    Abdullahi claims punitive damages in an amount to be determined by the jury against defendants Barlow and Villegas as a matter of right under federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

142.    Abdullahi is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## Count IV – *Monell* Violation – 42 U.S.C. § 1983
### (Plaintiff v. the City of Minneapolis)

143.    Abdullahi hereby realleges and incorporates each paragraph as though fully set forth herein.

144.    The facts alleged detail that the City of Minneapolis, at all times acting under color of law, engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct via MPD officers.

145.    The City, with deliberate indifference to the rights of Abdullahi and others similarly situated as Abdullahi, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that created an atmosphere where MPD officers regularly engage in excessive force in violation of the Fourth Amendment and retaliation in violation of the First Amendment.

146.    The City's employees regularly turn a blind eye to excessive force and retaliation by MPD officers.

147.    These customs, patterns, or practices, were the moving force behind Abdullahi's injuries.

148.    As a direct and proximate result of the acts and omissions of Barlow and Villegas, Abdullahi suffered great bodily and mental harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

149.    Abdullahi is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

150.    Abdullahi seeks equitable remedies, including but not limited to permanent injunctive relief, to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein.

## Count V – *Canton* Violation – 42 U.S.C. § 1983
### (Plaintiff v. the City of Minneapolis)

151.    Plaintiff hereby realleges and incorporates each paragraph as though fully set forth herein.

152.    The facts alleged detail that the City of Minneapolis, at all times acting under color of law, engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct via MPD officers.

153.    The City, with deliberate indifference to the rights and safety of people present in Minneapolis and/or engaging in lawful conduct and/or protected activity, failed to properly train MPD officers and failed to adopt, implement, or require adherence to state and federal law, appropriate policies, and regulations related to the use of excessive force and retaliation in violation of the Fourth and First Amendments.

154.    The City, by such conduct, demonstrated deliberate indifference and a protracted failure to care for the rights and safety of people present in Minneapolis and/or engaging in lawful conduct and/or protected activity.

155.    This failure to train was the moving force behind Abdullahi's injuries.

156.    As a direct and proximate result of the acts and omissions of Barlow and Villegas, Abdullahi suffered great bodily and mental harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

157.    Abdullahi is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

158.    Abdullahi seeks equitable remedies, including but not limited to permanent injunctive relief, to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein.

## **Prayer for Relief**

WHEREFORE, Plaintiff Said Abdullahi prays for judgment against Defendants as follows:

1.      As to Count I, a money judgment against Defendants Barlow and Villegas for special and compensatory damages in an amount to be determined by the jury and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest;

2.       As to Count II, a money judgment against Defendants Barlow and Villegas for compensatory damages in an amount to be determined by the jury and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest;

3.       As to Count III, a money judgment against Defendants Barlow and Villegas for special and compensatory damages in an amount to be determined by the jury and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest;

4.       As to Counts IV and V, a money judgment against the City for special and compensatory damages in an amount to be determined by the jury in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest, and equitable remedies including but not limited to permanent injunctive relief to cease the unconstitutional or otherwise unlawful policies, practices, and customs of the City and its police department as described herein; and

5.       For such further relief as this Court deems just and equitable.

**NEWMARK STORMS DWORAK LLC**

Dated: November 21, 2023

/s/ Jeffrey S. Storms
Jeffrey S. Storms, MN #0387240
Paul C. Dworak, #391070
Naomi E. H. Martin, #0402332
222 South Ninth Street, #470
Minneapolis, MN 55402
Telephone: 612.455.7050
jeff@newmarkstorms.com
paul@newmarkstorms.com
naomi@newmarkstorms.com

*Attorneys for Plaintiff*